[Township of Cumru *v.* Directors of Poor for County of Berks.]

of streets and the assessment of damages therefor.    And while in the particular portion of territory embraced within the city of Reading that jurisdiction has been transferred to the Court of Common Pleas, the fact remains that the city not only consented to but invoked the jurisdiction of a court having such general jurisdiction, and having now obtained the fruits of their proceeding, it does not lie in the mouth of the municipality to raise such an objection as this.    Had the parties consented to the jurisdiction of a court having no general control of such matters, as, for instance, the Orphans' Court, the proceedings would have been absolutely void, and no consent of either party would have worked an estoppel.    But as the case stands we are of opinion that good faith and fair dealing alike require the city to pay their awards, and to this end the proceedings below are

Affirmed.

# Township of Cumru *versus* The Directors of the Poor for the County of Berks.

1. A poorhouse and the farm connected therewith used for the employment and maintenance of the poor of a county, and supported by taxes assessed and collected by the county officers from the taxable property and inhabitants of the county, is an institution of purely public charity under Article IX., sec: 1, of the Constitution, and is exempt from taxation under the Act of May 14th, 1874, P. L., 158.

2. The real estate belonging to a corporation incorporated for the employment and maintenance of the poor of a county, the taxes for the support of which are assessed and collected by the county officers from the taxable property and inhabitants of the county, is not taxable for road purposes under an Act making the real estate belonging to the county taxable for such purposes, because said real estate does not belong to the county.

March 3d, 1886.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term, 1886, No. 163.

Case stated, in the nature of a special verdict, between the Township of Cumru, plaintiff, and the Directors of the Poor and of the House of Employment for the County of Berks, as follows:

1. By an Act of General Assembly of the Commonwealth of Pennsylvania, approved March 29th, 1824, it was provided as follows: That the citizens of said county of Berks, qualified to vote for members of the House of Representatives,

[Township of Cumru v. Directors of Poor for County of Berks.]

shall, at the general election next ensuing the passing of this Act, in the manner prescribed by the laws regulating the general election of this Commonwealth, elect three reputable citizens of said county to be Directors of the Poor and of the House of Employment for the county of Berks, . . . . . to meet at the court house in said county, . . . . . and divide themselves by lot into three classes; the place of the first to be vacated at the expiration of the first year; of the second at the expiration of the second year; and of the third at the expiration of the third year; so that after the first election one director shall be annually elected in the mode above prescribed, to serve for the term of three years. . . . . . That the said directors shall forever hereafter, in name and in fact, be one body politic and corporate in law, to all intents and purposes whatsoever relating to the poor of the county of Berks, and shall have perpetual succession, and may sue and be sued, plead and be impleaded, by the name, style, and title of "The Directors of the Poor and of the House of Employment for the County of Berks," and by that name shall be and are hereby authorized to receive, take, and hold any lands, tenements, and hereditaments, not exceeding the yearly value of twenty thousand dollars, . . . . . and to purchase, take, and hold any lands and tenements within the said county in fee simple or otherwise, and erect suitable buildings thereon for the reception, use, and accommodation of the poor of the same county. The said Act of Assembly further prescribed that as soon as conveniently may be after their organization as aforesaid, the said directors shall make an estimate of the probable expense of purchasing the land, erecting the necessary buildings, and furnishing the same; whereupon the commissioners of said county were, by said Act of Assembly, authorized and required to provide by taxation of said county the moneys requisite for such purchase, erection, and furnishing. In pursuance and by virtue of said Act of Assembly the defendant corporation, being constituted, composed and organized in accordance with the provisions thereof, with funds for that purpose furnished by the county of Berks, in pursuance of and in compliance with the requirements of said Act of Assembly, acquired and purchased certain lands in the township of Cumru, in said county, amounting to about 600 acres, and erected buildings thereon, which said lands, with the buildings and improvements thereon, commonly known and designated as the "poorhouse property," the said corporation defendant still holds in fee simple.

2. The said lands are used, employed, worked, and cultivated by, and under the direction of, the said corporation defendant as farm land, and the revenues derived therefrom

are accounted for to, and paid into the treasury of, said county of Berks, by said corporation defendant, in pursuance of said Act of Assembly, and incorporated with the general funds of said county.

3. The expenses of the management of said property and institution are, in pursuance of said Act of Assembly, provided for by taxation of the county of Berks, and defrayed by means of orders or warrants drawn by said directors upon the treasurer of said county, and payable out of the general funds of said county. The said corporation defendant and said property and institution derive no support from the state.

4. The 13th section of the Act of General Assembly, approved April 5th, 1848, provides: "That the real estate belonging to the county of Berks, and situate in Cumru township, in the said county, shall be liable to the payment of road taxes in the said township, and shall be assessed for that purpose in the same manner as the real estate in the said township owned by individuals."

5. The said real estate belonging to the county of Berks, held, as aforesaid, by said The Directors of the Poor and of the House of Employment for the County of Berks, in the said township of Cumru, commonly known or designated as the "poorhouse property," has been duly and in due legal form assessed, in the same manner as the real estate in the said township-owned by individuals, for the purpose of road tax in said township, in pursuance of said last mentioned Act of Assembly, and the road tax apportionable thereto has been duly and in due legal form assessed and levied thereon, opportunity being duly afforded and demand made upon said directors of the poor, &c., to work out the same, and payment thereof and of any balance or balances due thereupon has been duly demanded from the said The Directors of the Poor and of the House of Employment for the County of Berks, for and during the years 1878, 1879, 1880, 1881, 1882, 1883, 1884 —the road taxes for said years being payable, respectively, in the years 1879, 1880, 1881, 1882, 1883, 1884, 1885—and payment thereof, or of any balance or balances due thereupon, has been refused by the said The Directors of the Poor, &c., the corporation defendant.

6. It is agreed that the total amount of the road taxes proportionable to and assessed as aforesaid, upon said "poorhouse property," for and during the years aforesaid, is $3,501; and that the work done by and under direction of the said the directors of the poor, during said years, upon notice and demand to work out road taxes, upon public roads in said township of Cumru, has been to the amount of $548.82.

7. It is further agreed that all Acts of Assembly, special or

[Township of Cumru v. Directors of Poor for County of Berks.]

general, bearing upon the question or questions presented or raised by this case stated, are to be considered as part thereof and as embodied therein.

If the court be of opinion that the aforesaid real estate held by the said The Directors of the Poor and of the House of Employment for the County of Berks, in said township of Cumru, is liable to assessment for, and that the said corporation defendant is liable to pay, road tax in and to said township of Cumru, then judgment to be entered for plaintiff for the sum of two thousand nine hundred and fifty-two dollars and eighteen cents ($2,952.18) ; but if not, then judgment to be entered for defendant. The costs to follow the judgment, and each and either party reserving the right to sue out a writ of error therein.

. The court, SASSAMAN, J., directed judgment to be entered for the defendant, filing the following opinion :

The point raised by this case stated is, Is the defendant liable to the plaintiff for road tax ? As to all other taxes this question was settled in the negative by the late Judge WOODWARD in The Township of Cumru v. The Directors of the Poor and House of Employment of Berks County, C. C. P., Berks Co., 183, April Term, 1864, 1 Woodward's Decisions, p. 175. This would also, in principle, have held the defendant not liable for road taxes, but for the intervention of the Act of Assembly of the 5th day of April, 1848, P. L., p. 338, sec. 13, which says that the real estate belonging to the county of Berks, in the township of Cumru, shall be liable to the payment of road taxes in the said township. This would be definite and final in the determination by its legislative discretion had the matter been left to stand so. This section is a special enactment tacked on to a bill for other purposes, but it made positive law for the time being. The Constitution of 1874 for the State of Pennsylvania, art. 9, sec. 1, declares that all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial, not used or held for private or corporate profit, and institutions of purely public charity. In pursuance of this, now the fundamental law of the state, the legislature did, on the 14th day of May, 1874, enact that all hospitals . . . . . and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity, . . . . . be and the same are hereby exempted

[Township of Cumru *v.* Directors of Poor for County of Berks.]

from .all and every county, city, borough, bounty, road, school, and poor tax: Act 14th May, 1874, P. L., 158, sec. 1, Purd. Dig., 1596, pl. 90. This is a general law to carry out a constitutional provision and would supersede and by implication repeal any and every private or special law inconsistent therewith. This law prevails now in this county.

It is admitted that defendants are a corporation under the Berks County Poor House Act of the 29th day of May, 1824, P. L. 200–6, and that these lands sought to be taxed, the buildings thereon erected, and the institution thereon conducted and maintained for about sixty years, was all done and paid for out of the funds and the treasury of the county of Berks, and that it was the institution for the maintenance and employment of the poor in and for said county. The whole affair required a continuous appropriation for the use of the poor drawn from the body of the people and their property by means of taxes levied upon them by the power of the county —collected and thus contributed. There is no question made that during all this time, and to this day, there was not an hospital, a department for the insane poor and place of employment kept there for the maintenance of the poor found within said county, who had no other means of support and maintenance. It cannot be successfully alleged or maintained that it ever was any source of revenue or profit to the said county. It is notorious that it annually requires a large amount of the public funds of the county to keep up this institution. No one is favored here above another—there are no class distinctions—all of the class of poor found within the county go there and are all kept, protected and maintained in one common home at the common expense of the county, which never has derived any revenue or profit therefrom. This makes it a purely public charity such as contemplated by the Act of Assembly above referred to, and hence belongs to the class of properties exempted from the payment of taxes, including road tax. Many cases of this class have been before the Supreme Court, and in all of them, where the institutions were not in some way exclusive, but for the public good generally, and in no wise conducted for revenue or profit, they were held to be exempt. The only question is whether the present tax exemption law embraces the objects about which the controversy arises, and if it does, the statute is plain and conclusive. On this point we are clear that it is purely a public charity.

Judgment for defendant.

Judgment was accordingly entered for the defendant. The plaintiff thereupon took this writ, assigning for error the entering of judgment for the defendant.

*G. A. Endlich,* for plaintiff in error.—Whilst public property is deemed outside of the intent of general tax laws, it is not excluded from the power of tax laws: Cooley, Tax., p. 131; and the right of the legislature to subject such property to taxation has never been questioned, especially taxation for local purposes: Cooley, Tax., pp. 458–459.

The Legislature has made defendants' property subject to road-taxes in Cumru Township, by section 13, Act 5th April, 1848, P. L., 338. That section has never been repealed expressly, and never, it is submitted, by implication.

1. The Act of 3d April, 1873, P. L., 64, was an act repealing exemptions, and excepting only such almshouses, etc., as derived support from the state. Hence, upon the facts agreed by the case stated (§ 3), it is here admittedly inapplicable.

2. Article ix., sections 1 and 2, of the Constitution of 1874, "did not execute themselves so as to repeal any existing laws providing for the assessment and collection of taxes," but relate merely to future legislation: Coatesville Gas Co. *v.* County of Chester, 97 Pa. St., 476; Commonwealth *v.* Harding, 87 id.; 343; Perkins *v.* Slack, 86 Id., 270; Indiana Co. *v.* Agricultural Society, 85 Id., 357; Iron Co. *v.* Lower Macungie Twp., 81 Id., 482.

3. The Act of 14th May, 1874, P. L., 158, either (i.) fails to reach this property so as to repeal, by implication, § 13 of the Act of 1848; or (ii.) if it can be construed to embrace this property, makes it expressly liable to taxation without restriction, thus leaving that section undisturbed.

(*a.*) The Constitution prescribes no exemptions, but merely authorises (without even directing) the passage of certain exemption laws.

(*b.*) The Act of 1874 does not exempt "public property used for public purposes," as such, generally, or absolutely.

(*c*) As to the classes of property enumerated, the exemption enacted by the Act of 1874 is qualified and restricted— or, it may perhaps be more accurate to say that the classes of property intended to be exempted are narrowed down and circumscribed by the proviso, that "All property, real and personal, other than that which is in actual use and occupation for the purposes aforesaid; and from which any income or revenue is derived, shall be subject to taxation, except where exempt by law for state purposes."

The clause "except where exempt by law for state purposes" has been construed by this court as referring merely to state, not local, taxation, and as intended to "guard against a construction which would have reinstated a tax for state purposes on real estate then exempt therefrom:" Chadwick *v.* Maginnes, 94 Pa. St., 117, 120. It has, therefore, no bearing upon the present inquiry.

The remainder of the proviso has been (in the same case) construed to subject to taxation "all property not expressly exempt, and especially property from which any income or revenue is derived" (p. 120); thus properly construing the word "and," after the semicolon, as "or."

Now, the poorhouse property in Berks County, as appears from the case stated, is in this position: Its legal title is in the Directors of the Poor, the defendants; its equitable owners are the taxpayers of the county of Berks; to them, in their organized capacity as a county, it is distinctly the source of revenue, of income; this revenue is directly applicable—not to the maintenance of the poor or of the property: that comes in another way (see § 3, case stated)—but to the increase of the general funds (§ 2), to the reduction of the net expenses of the county, to the diminution of the general tax burden of its individual citizens.

*William D. Horning*, for defendant in error. — The poorhouse and the lands belonging thereto was purchased by moneys drawn from the county treasury, hence the property itself belongs to the county, in fact, is county property, Cumru Township *v.* The Directors of the Poor, etc., 1 Woodward, 175, and is therefore public property.  As such, it is not subject to the tax laws, unless made so by special Act of Assembly.   No exemption law is needed for any public property held as such: The Directors of the Poor of Schuylkill County *v.* The School Directors of North Manhime Township, 6 Wright, 21; Piper *v.* Singer, 4 S. & R., 354.

The funds with which this institution is founded, endowed and maintained, are the gifts of the county, devoted to the public use, viz., the employment and support of the poor of the county, and, therefore, are charitable funds: Wright *v.* Linn, 9 Barr, 438.

The institution itself is public, because founded, endowed and maintained at the public expense: The Directors, etc., *v.* The School Directors, etc., 6 Wright, 21; The Township of Cumru *v.* The Directors of the Poor, etc., of Berks County, 1 Woodward, 175.

The institution is a purely public charity, because devoted to the employment and support of the poor of the county, without regard to sex, race or creed; and hence, in view of these facts, may justly be defined to be a public institution of purely public charity, founded, endowed and maintained by public charity, and, therefore, within the very letter and meaning of the Act of May 14th, 1874: The Bird Orphan Asylum *v.* The School District of Upper Darby, 9 Norris, pp. 29, 35; Dartmouth College *v.* Woodward, 4 Wheaton, 670; Humphries *v.* The Little Sisters, 29 Ohio, 206.

[Township of Cumru *v.* Directors of Poor for County of Berks.]

The prior special Act of the 5th of April, 1848, making the almshouse property liable to the payment of road tax to Cumru Township, must fall, and is repealed, by implication, by the subsequent general Act of the 14th of May, 1874: John Nusser *v.* The Commonwealth, 1 Casey, 126; Shinn *v.* The Commonwealth, 3 Grant, 205; Wright *v.* Vickers, Adm'r, 31 P. F. S., bottom of page 128; in re-contested election of Barber, 5 Norris, 400; Street *v.* The Commonwealth, 6 W. & S., 209.

Mr. Justice GORDON delivered the opinion of the court, March 29th, 1886.

We agree with the learned Judge of the court below that the property in question belongs to a public charity, and as such is not taxable for road purposes by the township of Cumru. Not, indeed, because the Special Act of April 5th, 1848, authorizing real estate of the county of Berks, within the said township, to be taxed for road purposes, has been repealed by the General Act of 1874, but because the property in question does not belong to the county. By the Act of the 24th of March, 1824, a distinct municipality was erected, whose jurisdiction in pauper cases was commensurate with the territorial limits of the county, and whose franchises were to be administered by three elective officers, designated in said Act as " Directors of the Poor and House of Employment for the county of Berks." These, by the statute, were constituted a body politic with perpetual succession, and were authorized to take and hold any lands or tenements within the said county, in fee simple or otherwise, " and erect suitable buildings thereon for the reception, use, and occupation of the poor of the same county." It certainly does not matter that the money used for the purchase of the land and the erection of the buildings was raised by assessments made by the County Commissioners, for the money thus raised was intended for the use of the poor district, and the municipalty known as " Berks county " had no interest in or control over it or the property it was used to purchase. That the taxes were to be assessed and collected by the county officers did not make the money thus raised any more the property of the county than does the assessment and collection of State taxes, by the same instrumentality, invest the county with the right thereto. In the one case these officers are trustees for the poor district, and in the other for the State. We repeat, therefore, the land and buildings in question were exempt from township taxation, not because of the repeal of the Act of 1848, for we do not believe that the Act of 1874 worked any such result, but because the property belonged to the poor district and not to the county.

The judgment is affirmed.