## Commonwealth v. Brown

*Malcolm Muir*, Lycoming County solicitor, and *H. Swank Phillips*, solicitor for Lycoming County Controller, for appellants.

*John P. Campana*, for constable.

LIPEZ, P. J. (twenty-fifth judicial district, specially presiding), August 11, 1955.—This is an appeal by the commissioners and controller of Lycoming County from the decision of the clerk of. this court following a hearing for retaxation of costs held before him pursuant to local rules of court. The clerk allowed the sum of $72 for .mileage to a constable covering 11 unsuccessful trips made by him in an effort to arrest defendant in this action. Thereafter defendant was served by the same constable with the warrant while lodged in the Lycoming County jail. We are to determine whether the constable is entitled to the mileage incident to the unsuccessful trips in attempting to serve the warrant.

Constables' fees are governed by the Act of July 20, 1917, P. L. 1158, sec. 1, as amended by the Acts of June 21, 1947, P. L. 773, sec. 1, and June 28, 1951, P. L. 931, sec. 1, 13 PS §61, which provides in pertinent part, as follows:

"For executing a warrant on behalf of the Commonwealth, for each defendant, two dollars fifty cents. . . . For traveling expenses in performance of any duty or service hereinbefore set forth, or in the performance of any other duty or service required by law, each mile going and returning ten cents; to be computed by the route usually traveled in going from points and places where said constables may reside, or where he receives any paper to be executed, to the points or places required to be traveled, whether that route be by highways, railroads, or otherwise: Provided, that in no case shall more mileage be demanded or received than for the miles actually traveled."

Nothwithstanding the fact that various earlier acts had similar provisions as to constables' mileage,[1] there appear to be no appellate court decisions in Pennsylvania construing this or similar language, and only two reported lower court cases. Thus, in Shrope v. The County of Northampton, 3 Lanc. L. R. 123 (1886), where the constable had made two unsuccessful trips with a warrant to Philadelphia, then a third trip to Wilkes-Barre where the arrest was effected, the court refused to allow mileage for the unsuccessful Philadelpia trips stating:

"But in my opinion it is wholly immaterial whether the trips were made in good faith or not. The fee bill

---

[1] The Act of April 2, 1868, P. L. 3, provided "traveling expeses in all cases for each mile circular .06" and the Act of February 17, 1899, P. L. 3, used precisely the same language as to mileage as the act we are construing, except that the specified rate was .06 per mile.

allows a certain compensation 'for executing a warrant on behalf of the Commonwealth'. It also allows for 'traveling expenses', by which is undoubtedly meant traveling expenses incurred in 'executing' the warrants. The fee bill, however, makes no allowance for preliminary searches. These may be made without a warrant as well as with one, and by a private citizen as well as by a public officer. Nor is it any part of the official duty of a constable to scour the state for offenders, and if he does so he must look to the parties employing him for his pay. When the offender is once located, the constable having a warrant for his arrest should go after him, and if he escapes the constable may pursue him anywhere within the state, and if successful in making the arrest, he would probably be entitled to charge mileage for the full distance thus traveled, provided that the pursuit was continuous and made in good faith. But where a constable starts out in one direction and returns without making the arrest, and then, as here, starts out the next day in a different direction and makes the arrest, we do not think that the fee bill contemplates that he should be paid mileage for the unsuccessful trip."

Similarly, in Commonwealth v. Lesher, 2 Dist. R. 859 (1893), where the constable made an unsuccessful trip with a warrant, and thereafter defendant was arrested by another officer, the court refused to allow mileage for the unsuccessful trip, holding that the statute "provides for compensation for services performed", and when in such a statute "an allowance is made for traveling expenses, it refers obviously to expenses incurred in the performance of those services, not in any abortive attempt to perform them".

The court cited Shrope v. Northampton, supra, and Ex Parte Wyles, 1 Denio (N. Y.) 658, as being in accord.

An analysis of numerous decisions construing legis-

lation relating to the compensation of public officers, indicates the following guiding principles:

1. Public officers have no right to compensation, except as provided by law. They can claim no compensation for any service not specified or provided for in the fee bill: Lehigh Co. v. Semmel, 124 Pa. 358.

2. Statutes relating to compensation of public officers must be strictly construed, and such officers are entitled to only what is clearly given by law: Jones v. Lennox, 85 D. & C. 136.

3. Any doubt on the subject should be resolved in favor of the public and against the officer: [2] Price v. Lancaster, 7 Pa. Superior Ct. 119.

4. The mere fact that an officer performs certain duties does not of itself give rise to a claim for compensation: Nowling v. Newell, 65 Pa. Superior Ct. 67.

5. A construction is favored which tends to prevent improper or fraudulent practices: Steckman v. County of Bedford, 84 Pa. 317.

In the light of these principles, we have no difficulty in concluding, as did the court in Shrope v. Northampton, supra, that mileage cannot be allowed for the unsuccessful trips,[3] even though the constable ultimately made the arrest. To allow such mileage we would have to hold that the language "for traveling expenses in the performance of any duty or service" should, in effect, read "in the performance or *attempted performance* of any duty or service". To so decide would not only be contrary to the above rules of construction, but we would be arrogating to ourselves the power to amend the fee bill, which obviously is a matter solely for the legislature.

---

[2] In a similar vein the Statutory Construction Act (46 PS §552(5)), provides "That the Legislature intends to favor the public interest as against any private interest."

[3] This seems to be the rule in a majority of the jurisdictions. See 80 C. J. S. Sheriffs and Constables, §251(b).

The constable contends that the language in the proviso at the end of the mileage clause, which states, "Provided, that in no case shall more mileage be demanded or received than for the miles actually traveled" indicates that the legislature intended, by the use of the words "miles actually traveled", that the constable be paid for the total distance actually traveled covering both the unsuccessful, as well as the successful, trips. However, it is clear that since this proviso clause refers to the immediately preceding mileage clause, such a construction would be an extension, rather than a limitation, of the operation of the mileage clause, and hence violative of section 54 of the Statutory Construction Act (46 PS §554) which states, "Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer".[4]

Undoubtedly the disallowance of mileage for unsuccessful trips will at times cause some hardship to constables. However, there are other provisions in the fee bill which are quite generous in the allowances for services and would probably offset the infrequent mileage losses. The constable therefore must balance the profitable against the unprofitable, and since there is no compulsion about serving in such office, he has the choice of either continuing in office or resigning.

In any event, if a remedy is needed, it is a matter for the legislature, and not the courts.

### Order

And now, August 11, 1955, the appeal in the within matter is sustained and the allowance of mileage to Constable Pierce R. Holmes for 11 unsuccessful trips in the sum of $72 is disallowed.

---

[4] This was the well settled rule in Penna. even prior to the Act. See Montgomery v. Martin, 294 Pa. 25; Orlosky v. Haskell, 304 Pa. 57; Commonwealth ex rel. Margiotti v. Lawrence et al., 326 Pa. 526; In re Portunodo Est. 20 Pa. C. C. 209.